
<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIDA ADORNO-BEZARES and ISRAEL BEZARES,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>CITY OF NEW BRUNSWICK DEPARTMENT OF PLANNING, COMMUNITY, & ECONOMIC DEVELOPMENT; JOSEPH MCNULTY; SAM K. JOHN; FRIENDLY MAINTENANCE, INC; JOHN DOES 1-10, names being fictitious; and ABC CORP. 1-10, fictitious corporations,<br><br>　　　　　Defendants. | Civil Action No.:<br>11-151 (PGS)<br><br><br>MEMORANDUM AND ORDER |

<u>SHERIDAN, U.S.D.J.</u>

　　　　This matter comes before the Court on defendants Friendly Maintenance, Inc., Joseph McNulty, and Sam K. John's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c). In their Complaint, plaintiffs Aida Adorno-Bezares and Israel Bezares alleged that the City of New Brunswick Department of Planning, Community, and Economic Development violated both the Racketeer Influence and Corruption Organizations Act ("RICO") and New Jersey Racketeer Influence and Corruption Organizations Act ("NJ RICO"). For the reasons set forth below, defendant's motion to dismiss is denied. [Docket Entry No. 36].

I

　　　　At all times relevant to this case, the City of New Brunswick ("City") participated in the Home Investment Partnership Program ("HOME") and the Community Development Block Grant Program ("CDBG") operated by the United States Department of Housing and Urban

Development ("HUD"). Compl. ¶ 11. HOME and CDBG support infrastructure development by helping remedy substandard homes in participating jurisdictions. *Id.* at ¶ 10. According to the Complaint, defendant City of New Brunswick Department of Planning, Community and Economic Development ("Planning Department") administered HOME and CDBG funds through its Housing and Rehabilitation Program ("Rehabilitation Program") as part of the City's Neighborhood Preservation Project ("Preservation Project"). *Id.* at ¶ 11. In or around early 2006, the Planning Department approved plaintiffs Aida Adorno-Bezares and Israel Bezares's (collectively, "Plaintiffs") application to participate in the Rehabilitation Program. *Id.* at ¶¶ 23-24.

Through its Rehabilitation Program, the Planning Department provided deferred loans of up to $30,000.00 to low and moderate income City homeowners for major home repairs. *Id.* at ¶ 12. In exchange for the deferred loan, the Planning Department placed a ten year lien on the property. *Id.* at ¶ 13. If the homeowner remained in the home until the end of the ten-year period, the Planning Department would forgive the loan and could discharge the lien. *Id.* A homeowner interested in receiving a deferred loan applied to the Planning Department, which then sent a contractor to the home to determine the work that needed to be completed. *Id.* at ¶ 15. Following this consultation, the homeowner would enter into a contract with the contractor detailing the scope of the project and the deadlines for completion. *Id.* at ¶ 16.

On March 14, 2006, Plaintiffs entered into an agreement with Friendly Maintenance, Inc. ("Friendly") to perform work in their bathroom and kitchen. *Id.* at ¶ 24. On March 23, 2006, the parties altered the agreement to allow repair work on Plaintiffs' siding and windows. *Id.* Plaintiffs allege that the City did not issue any permits related to Friendly's work on their home, nor did the City perform any inspections after the work was completed. *Id.* at ¶ 25. On the

2

morning of January 23, 2007, Plaintiffs and members of their family awoke to smoke and flames, which Plaintiffs allege originated in their kitchen and spread to the other areas of their home. *Id.* at ¶ 27. According to the Complaint, the City's Fire Inspector conducted an investigation on Plaintiffs' home and found "poor workmanship to the house electrical system in the area of the kitchen." *Id.* at ¶ 28.

Defendants, Joseph M. McNulty ("McNulty") and Sam K. John ("John") were co-owners of Friendly. *Id*. at ¶ 17. From 2004 to 2006, the Planning Department awarded approximately $1.3 million in contracts to Friendly for the rehabilitation of homes pursuant to the Rehabilitation Program. *Id.* It was later discovered that McNulty and John were making corrupt cash payments to several employees within the Planning Department in order to steer contracts towards Friendly. *Id.* at ¶ 18. The corrupt cash payments also ensured that City inspectors would exercise leniency when performing inspections on Friendly projects. *Id.* The corrupt cash payments were made on a monthly basis to the employees within the Planning Department. *Id.* at ¶ 20. McNulty and John, as well as Planning Department employees William Walker, Richard Kaplan, Steven Scott, and Linda Carol Roach, have all pled guilty for their participation in this scheme. *Id.* at ¶ 21. William Walker served as the Director of the Preservation Project. *Id.* at ¶ 19. Richard Kaplan and Steven Scott were City Construction Inspectors and Linda Carol Roach was a Supervisory Clerk and Typist. *Id.*

On January 7, 2011, Plaintiffs filed a complaint against the Planning Department, Friendly, McNulty, and John alleging violations of RICO and NJ RICO. Additionally, Plaintiffs allege that Friendly, McNulty and John are liable for fraud, breach of contract, and civil conspiracy. On June 16, 2011, the Planning Department filed a motion to dismiss Plaintiffs' RICO and NJ RICO claims against it pursuant to Rule 12(c). On September 16, 2011, Friendly,

McNulty, and John filed this motion to dismiss Plaintiff's RICO and NJ RICO claims against the Planning Department.

II

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(h)(2)(B) permits a defense of failure to state a claim to be made through a Rule 12(c) motion. In deciding a motion for judgment on the pleadings based upon a failure to state a claim, courts apply the same standard of review as under Rule 12(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d. Cir 1991). Federal Rule 12(b)(6) allows a court to dismiss a complaint when a plaintiff fails to state a claim upon which relief can be granted. When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all allegations in the pleading as true, must draw all reasonable inferences that can be drawn therefrom, and view such allegations and inferences in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). A cause of action should be dismissed only if the alleged facts, taken as true, fail to state a plausible claim. *Iqbal*, 129 S. Ct. at 1950.

While a court will accept well-pleaded allegations as true for the purposes of a motion to dismiss for failure to state a claim, a court will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). On the contrary, the pleadings must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Santiago v. Warminster Twp.*,

4

629 F.3d 121, 128 (3d Cir. 2010). A party must set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. When evaluating a motion to dismiss, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." *Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004).

### III

A. Federal RICO

Plaintiffs assert claims against defendants under RICO Sections 1962 (b), 1962(c), and 1962(d). Section 1962(c) of the RICO statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprises affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Section 1962(b) is different from Section 1962(c) in the fact that Section 1962(b) requires a sufficient allegation of "an interest in or control of" an enterprise, as opposed to the less demanding requirement of "association with" an enterprise required in Section 1962(c) claims. Section 1962(d) makes it unlawful for any person to conspire to violate any subsection of Section 1962. *Id.* § 1962(d). The RICO statute authorizes civil suits by "any person injured in his business or property by reason of a violation of section 1962. *Id.* § 1964(c).

To demonstrate a violation of any RICO subsection, a plaintiff must show that a defendant conducted: (1) an enterprise; (2) through a pattern; (3) of racketeering activity. *Sedima S.P.R.L. v. Jmrex, Co.*, 473 U.S. 479, 496 (1985). Section 1961(4) defines an "enterprise" to include 'any individual, partnership, corporation, association, or other legal entity, and any

5

union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A plaintiff must allege and prove the existence of two distinct entities: (1) a "person;" and (2) an "enterprise" that is not simply the same "person" referred to by a different name. *State Farm Mut. Auto. Ins. Co. Lincow*, 444 F. App'x 617, 621 n. 2 (3d. Cir. 2011) (citing *Cedric Kushner Promotions. Ltd. v. King*, 533 U.S. 158 (2001)). A company's owner is distinct from the corporation itself which is considered a distinct legal entity, with legal rights, obligations, powers and privileges different from those of the natural individuals who own it, *King*, 533 U.S. at 163.

A "pattern of racketeering activity" is defined as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of [the RICO statute] and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Section 1961(1) provides a list of the federal and state crimes which constitute "racketeering activity" and includes both bribery and fraud. Additionally, in order for a RICO plaintiff to prevail, he must also show that the conduct of the "enterprise" affects interstate commerce and that it "has been injured in its business or property by the conduct constituting the violation. *Sedima*, 473 U.S. at 496.

In their moving brief, the defendants assert that Plaintiffs have not adequately pleaded a RICO cause of action because: (1) Friendly was not an enterprise; (2) McNulty and John, as owners of Friendly, are not distinct from the enterprise; (3) there is no evidence that the defendants engaged in a pattern of racketeering activity; and (4) Friendly was not engaged in interstate commerce. Def,'s Supp. Br. 16-24. The Court is not persuaded that any of the defendants' arguments entitle them to a judgment on the pleadings. The plain language of the RICO statute illustrates that Friendly constituted an "enterprise." According to Plaintiffs'

6

Complaint, at all times relevant to this matter Friendly was a corporation organized under the laws of New Jersey. Compl. ¶ 5. Corporations are explicitly mentioned in the RICO falling within the definition of an "enterprise." 18 U.S.C. § 1961(4). Additionally, McNulty and John are "persons" distinct from the "enterprise" that they owned. As noted above, the Supreme Court has held that owners and corporations are distinct from one another. *King*, 533 U.S. 163. "After all, incorporation's basic purpose is to create a distinct legal entity." *Id.* Moreover, Plaintiffs clearly defined McNulty, John and the other defendants as "persons" and Friendly as an "enterprise" in their pleadings. Compl. ¶J 3 1-32, 41-42.

Plaintiffs' Complaint sets forth a "pattern of racketeering activity" as that term is defined pursuant to RICO. Plaintiffs have alleged that defendants administered a series of corrupt cash payments to various City officials. *Id*. ¶ 19-20. Specifically, Plaintiffs identify nineteen payments made by McNulty and John to Planning Department employees between January 2004 and September 2006. RICO Case Stmt. ¶ 5(b).

Lastly, Plaintiffs alleged in their Complaint that Friendly is an "enterprise" that affects interstate commerce. Compl. at ¶ 32. It is conceivable that a construction company, like Friendly that purchases various construction supplies and materials, affects interstate commerce. Furthermore, as Plaintiffs point out in their Opposition Brief, the defendants' alleged "pattern of racketeering activity" resulted in the payment of federal money, from the HUD, to the defendants. Opp'n Br. 11.

The Court finds that Plaintiffs have adequately pleaded violations of Sections 1962(b), 1962(c), and 1962(d). McNulty and John were clearly "associated with" Friendly, which they owned and operated. Additionally, as owners McNulty and John possessed "an interest in" in Friendly pursuant to Section 1962(b). Lastly, Plaintiffs have adequately pleaded that McNulty

and John conspired with Planning Department employees to transgress Sections 1962(b) and 1962(c) in violation of Section 1962(d).

B.     NJ RICO

Plaintiffs also assert that the defendants violated NJ RICO. Because the federal RICO statute served as a model for NJ RICO, courts heed federal legislative history and case law in construing NJ RICO cases. *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 510 (3d Cir. 2006). Pursuant to N.J. Stat. Ann § 2C:41—2(c), "it shall be unlawful for any person employed by or associated with any enterprise engaged in activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity of unlawful debt." To prove a violation of N.J. Stat, Ann. 2C:41—2(c), a plaintiff must establish: "(1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity." *State v. Ball*, 632 A.2d 1222, 1235 (N.J. Super. Ct. App. Div. 1993). NJ RICO defines participation as acting "purposefully and knowingly in the affairs of the enterprise in the sense of engaging in activities that seek to further, assist or help effectuate the goals of the enterprise." *State v, Ball*, 661 A.2d 251, 268 (N.J. 1995).

In the instant matter, Plaintiffs have sufficiently pleaded their claim under federal RICO. To the extent that courts heed federal legislative history and case law in construing NJ RICO cases, Plaintiffs' NJ RICO claims withstand the defendants' motion to dismiss.

C.     Proximate Cause

To recover, Plaintiffs must not only prove that a violation of Section 1962 occurred, but must also show that an injury directly resulting from some or all of the activities comprising the violation. *Town of Kearny v, Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir. 1987). Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." In determining whether an injury is sufficiently direct, the Court looks to three underlying justifications for requiring proximate causation: (1) difficulty in calculating the amount of the plaintiff's damages attributable to remote violations; (2) avoiding the need to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts and to obviate the risk of multiple recoveries; and (3) whether the general interest in deterrence is better served by another, more directly injured party. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 269-70 (1992).

In the instant matter, Plaintiffs have successfully alleged a direct connection between the corrupt cash payments and the fire in their home. Plaintiffs allege that the corrupt cash payments ensured that City inspectors would exercise leniency when performing inspections on Friendly projects. Compl. ¶ 18. Contrary to the opinion of the Planning Department, Friendly told Plaintiffs that no electrical work need to be done in their kitchen. Id. at ¶J 23, 26. According to the City's inspector, "the most plausible cause to this fire was a short circuit or arcing in the ovens [sic] electrical system." The Plaintiffs have adequately alleged that the poor electrical wiring installed by Friendly was a major factor in causing the fire. Additionally, Plaintiffs RICO Case Statement alleges the precise amount of damages they sustained as a result of the defendants' actions. Thus, there is no need for the Court to adopt a complicated system to apportion damages. Furthermore, the Court is not concerned about the need to apportion

damages to multiple parties because the defendants' actions principally affected Plaintiffs' home. Plaintiffs have pleaded proximate causation adequately enough to withstand Defendants' motion to dismiss.

    2.    Fraud Claims

    A.    New Jersey Consumer Fraud Act (NJCFA)

Plaintiffs allege that Friendly personnel told them that all work performed in the kitchen was of merchantable quality and met building code standards but, in actuality, Friendly's work was of poor quality and violated applicable building and fire codes. Compl. ¶ 52. Defendants claim that Plaintiffs have failed to adequately plead their fraud claims without providing any case law to support such an argument. Def 's Supp. Br. 29-30. To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff. *Frederico v. Home Depot,* 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462-65 (N.J. 1994)). The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice. deception. fraud, false pretense. false promise. misrepresentation. or the knowing concealment, suppression. or omission of any material fact with intent that others rely upon such concealment. suppression. or omission, in connection with the sale or advertisement of an merchandise . . .

N.J. Stat. Ann. § 56:8-2. "Unlawful practices fall into three general categories: (1) affirmative acts: (2) knowing omissions: and (3) regulation violations' *Cox*, 647 A.2d at 462.

Intent is irrelevant "if the claim is based on a defendants's alleged violation of a regulation because the regulations impose strict liability for such violations." *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 748-49 (N.J. 2009). The parties subject to the regulations

10

are assumed to be familiar with them, so that an violation of the regulations constitutes a violation of the NJCFA. *Cox*, 674 A.2d at 462. In the instant matter, Plaintiffs allege that Friendly was required to obtain permits and it failed to do so. Compl. ¶ 74. Therefore, Plaintiffs have successfully alleged an unlawful practice under the NJCFA. Additionally, Plaintiffs have provided the estimated cost of repairing their home at $79,950.00: and thus, have demonstrated that they sustained an ascertainable loss. RICO Case Stmt. ¶ 17. Plaintiffs contend that they suffered this loss as a result of Friendly's unlawful practices because the poor quality of work performed by Friendly caused the fire damage to their home. Compl. ¶ 54, 55. Therefore, Plaintiffs have adequately pleaded a violation of the NJCFA.

B.     Common Law Fraud

The elements of fraud in New Jersey are: (1) a material representation by the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity: (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff: and (5) resulting damage to the plaintiff. *Weil v. Express Container Corp.,* 824 A.2d 174, 182 (N.J. Super. App. Div. 2003) (citing *Jewish Ctr. of Sussex Cty v. Whale*, 432 A.2d 521, 523 (N.J. 1981). Plaintiffs allege that Friendly personnel told them that all repairs were completed in accordance with applicable construction standards.  Plaintiffs further allege that Friendly knew that their corrupt payments to the City guaranteed leniency in inspections which allowed it to cut corners. Plaintiffs allege that they relied on Friendly's representations in agreeing that the repair work in their home was complete and of merchantable quality. Id at ¶ 59. As a result, Plaintiffs allege that they suffered a loss of $79,950.00 because of tire damage to their home. RICO Case Stmt, ¶ I 7. This Court finds that Plaintiffs have adequately pleaded a claim for fraud under New Jersey law.

    3.    Breach of Contract

To state a claim for breach of contract, Plaintiffs must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico*, 507 F.3d at 203. Defendants acknowledge the existence of a contract but argue that because the contract did not explicitly mention electrical work, they cannot be liable for breach of contract. Def.'s Supp. Br, 31-32. The Court doubts that the defendants could have renovated plaintiffs' kitchen without incident to the surrounding electrical work. Even assuming the defendants' work did not affect the electrical components of Plaintiffs' kitchen, Plaintiffs also assert that the structural work the defendants performed in their home 'was of substandard quality and in breach of their contract'. Compl. ¶J 70-71. Therefore, the Court finds that Plaintiffs have sufficiently pleaded their breach of contract claim.

### ORDER

This matter having come before the Court on defendant's motion to dismiss (ECF No. 36), and the Court having considered the parties' written submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78; and for the reasons stated above;

IT IS on this 10th day of September, 2012;

ORDERED that defendants Friendly Maintenance, Inc., Joseph McNulty, and Sam K. John's motion to dismiss is denied.

                                        *s/Peter G. Sheridan*
                                        PETER G. SHERIDAN, U.S.D.J.